UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Rancy Group, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Glazet Wholesale, Inc., <br><br> Defendants. | Civil No. 3:23-cv-00886 (JCH) <br><br><br> January 4, 2024 |

**CERTIFICATION OF FACTS RE:**
**PLAINTIFF'S MOTION FOR CONTEMPT [ECF NO. 29]**

This is a breach of contract case in which the plaintiff, Rancy Group, Inc. ("Rancy"), has obtained an order directing the defendant, Glazet Wholesale, Inc. ("Glazet"), to disclose all its assets. (ECF No. 24.) On October 19, 2023, Rancy moved for a finding of contempt and sanctions against Glazet for failing to comply with that order. (ECF No. 29.)  Senior United States District Judge Janet C. Hall referred the motion to me, United States Magistrate Judge Thomas O. Farrish. (ECF No. 33), and I held a hearing on the matter. (ECF No. 50.)  Pursuant to 28 U.S.C. § 636(e), I hereby certify facts constituting evidence sufficient to establish a *prima facie* case of contempt of Judge Hall's order by Glazet.

**I.    BACKGROUND**

This case arises out of a failed sale of expensive basketball cards.  Rancy filed its complaint on July 5, 2023 (ECF No. 1), alleging that Glazet failed to deliver the vast majority of the cards purchased and that, of those cards that Glazet actually delivered, two cases were defective.  (*Id.* ¶¶ 9, 17.)  Specifically, Rancy claims that on January 25, 2023, it ordered "20 cases of 2021/22 Panini Flawless Basketball Hobby 2 Box Case cards" from Glazet.  (*Id.* ¶ 6.)  Rancy paid the purchase

price of $354,000 over several installments, making the final payment on May 10, 2023. (*Id.* ¶¶ 6–8.)  Glazet, however, delivered "only 2 cases of the Flawless Cards." (*Id.* ¶ 9.)  Rancy also "placed an order . . . for the purchase of 2 cases of 2021/22 Panini Immaculate Collection Basketball Hobby 5 Box Case cards" with Glazet and, on "March 2, 2023 and March 9, 2023, [Rancy] paid Glazet $10,100 and $9,800 respectively for the 2 cases of Immaculate Cards." (*Id.* ¶¶ 15–16.)  Those two cases "were defective," and Rancy "returned the 2 defective cases . . . to" Glazet but has received no "conforming goods, or . . . refund for the defective goods." (*Id.* ¶¶ 18–19.)  Rancy alleges contract breach under both the common law and the Uniform Commercial Code, and it also alleges civil theft under Conn. Gen. Stat. § 53a-119(3). (*Id.*)  Rancy seeks damages for breach of contract, along with treble damages for theft under Conn. Gen. Stat. § 52-564. (*Id.* at 7.)

Glazet answered the complaint on August 8, 2023 (ECF No. 11), and the next day Rancy filed a motion for a prejudgment remedy and a motion for disclosure of assets. (ECF Nos. 12 and 13.)  Even after Judge Hall issued an order directing Glazet to show cause why the prejudgment remedy should not enter (ECF No. 15), Glazet filed no opposition to either of Rancy's motions. Judge Hall granted them on September 25 and 28, 2023, respectively. (ECF Nos. 22, 24.)  She gave Glazet fourteen days from the date of the latter order, or until October 12, 2023, to disclose its assets to the court and to the plaintiff. (ECF No. 24.)

A week after that deadline passed, on October 19, 2023, Rancy filed a motion for contempt against Glazet for failure to comply with Judge Hall's order and requested that sanctions be imposed. (ECF No. 29.)  Judge Hall referred that motion to me (ECF No. 33), and I entered an order directing Glazet to show cause, at a hearing scheduled for December 4, 2023, why it should

not be held in contempt. (ECF No. 35.) My order added: "A responsible officer of the defendant corporation is hereby **ORDERED** to attend the hearing in person." (*Id.*) (emphasis in original).

Shortly after receiving the order, Glazet's then-counsel informed me (through the Clerk's office) that its corporate representative was not planning to appear for the hearing. (ECF No. 40.) I therefore docketed a notice informing Glazet "that the hearing is going forward as scheduled, and that if a responsible officer of the defendant corporation does not appear as ordered, a *capias* will likely issue." (*Id.*) Glazet's counsel then moved to reschedule the hearing on account of a scheduling conflict, and I granted that motion. (ECF No. 43.) In my order, however, I reiterated that "a responsible officer of the defendant corporation is ordered to attend the hearing, and if s/he does not, a *capias* will likely issue." (*Id.*) Rancy's counsel then moved for a further continuance because of his own scheduling conflicts (ECF No. 45), and in my order granting that motion, I warned Glazet for the third time that a *capias* would probably issue if its corporate representative did not appear. (ECF No. 46.)

The hearing finally went forward on December 21, 2023. (ECF No. 50.) Attorneys David Falvey and John James Keenan appeared on Glazet's behalf.[1] Attorney Keenan conceded that Judge Hall's order for a disclosure of assets was clear and unambiguous, and that the evidence of Glazet's non-compliance was clear and convincing. He also stated that he had no personal knowledge of any efforts by Glazet to comply with the order.

Glazet's corporate representative, Mr. Hua Ze Li, then addressed the Court. He identified himself as the corporation's sole owner. He acknowledged that Judge Hall had ordered the company to disclose its assets to Rancy, and he also conceded that Glazet had not complied with

---

[1] Judge Hall has since granted Attorney Falvey's and Attorney Keenan's motion to withdraw their appearances. (ECF Nos. 41, 52.)

the order. When asked when the company would cure its non-compliance, however, he claimed not to understand and asserted that he needed a Chinese interpreter. I asked him other questions, but he claimed not to understand those as well – even those that merely re-asked questions that he had previously answered. In any event, the hearing closed without any meaningful attempt by Glazet to show cause why a contempt order should not enter.

## II.   LEGAL STANDARD

### A.   Civil Contempt

Courts have an inherent power to hold a party in civil contempt and impose sanctions for failure to comply with a lawful court order. *See New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989). A court may exercise this power when "(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *Id.* "The Court does not need to find that the party's violation of the order was willful." *Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.*, 438 F. Supp. 3d 203, 207 (S.D.N.Y. 2020) (citing *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)). "Because a contempt order is a severe sanction, it is subject to the higher 'clear and convincing' evidence standard rather than the usual preponderance of the evidence standard applicable to other civil cases." *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F. Supp. 2d 562, 565 (S.D.N.Y. 2001) (citing, *inter alia*, *New York State Nat'l Org. for Women*, 886 F.2d at 1351). "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002).

Upon a finding of civil contempt, the court may impose sanctions. "The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics Electromedicina Comercial, Ltda.*, 369 F.3d at 657. Coercive civil sanctions seek to ensure future compliance with the court's mandates, not to punish past violations. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) ("When a contempt involves the prior conduct of an isolated, prohibited act, the resulting sanction has no coercive effect . . . . [A] per diem fine imposed for each day a contemnor fails to comply with an affirmative court order . . . exert[s] a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged."). In fashioning coercive sanctions, courts have "broad discretion to design a remedy that will bring about compliance." *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982). The court must consider "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987). To be effective, coercive sanctions should "make it more economical for [the contemnor] to comply than to continue its contempt." *Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc.*, 673 F.2d 53, 56 (2d Cir. 1982).

### B.  Magistrate Judge's Authority Regarding Civil Contempt

A magistrate judge has limited civil contempt authority. *See Church v. Steller*, 35 F. Supp. 2d 215, 217 (N.D.N.Y. 1999). "The jurisdictional limitations placed upon United States magistrate judges, when addressing a motion for civil contempt, are informed by the provisions of 28 U.S.C. § 636(e). Under that section, in a case other than the one over which the magistrate judge presides

with a consent of the parties under 28 U.S.C. § 636(c), a magistrate judge is not authorized to issue a final contempt order." *NXIVM Corp. v. Bouchey*, No. 1:11-mc-0058 (GLS/DEP), 2011 WL 5080322, at *3 (N.D.N.Y. Oct. 24, 2011). Instead, a magistrate judge functions only to certify the facts that may constitute contempt to the district judge. *Church*, 35 F. Supp. 2d at 216-17; *see also United Rentals, Inc. v. Adams*, No. 3:19-cv-01210 (JBA), 2021 WL 8155600, at *2 (D. Conn. July 12, 2021); *Universitas Educ., LLC v. Benistar*, No. 3:20-cv-738 (JAM), 2021 WL 8202406, at *2 (D. Conn. Dec. 22, 2021), *report and recommendation adopted*, No. 3:20-cv-738 (JAM), 2022 WL 860411 (D. Conn. Mar. 22, 2022).

"In certifying facts under section 636(e), the magistrate judge's role is 'to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt.'" *Hunter TBA, Inc. v. Triple V Sales*, 250 F.R.D. 116, 118 (E.D.N.Y. 2008) (internal quotation marks omitted) (quoting *Church*, 35 F. Supp. 2d at 217). "The district court, upon certification of the facts supporting a finding of contempt, is then required to conduct a de novo hearing at which issues of fact and credibility determinations are to be made." *Id.* (citing *Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 907–08 (3d Cir.1992)). "Whether the conduct of a party constitutes contempt and any sanctions therefor are committed to the discretion of the district court." *Church*, 35 F. Supp. 2d at 217.

### III.  CERTIFIED FACTS

The record contains sufficient evidence to establish a *prima facie* case of contempt. In accordance with 28 U.S.C. § 636(e), I certify the following facts to Judge Hall:

Rancy filed a motion for prejudgment remedy and a motion for disclosure of assets on August 9, 2023. (ECF Nos. 12 and 13.) On August 11, 2023, Judge Hall ordered Glazet to show cause "why the Prejudgment Remedy should not be entered as moved for by the plaintiff" by

August 31, 2023.  (ECF No. 15.)  Glazet then failed to timely respond, and accordingly she granted Rancy's motion for prejudgment remedy on September 25, 2023, finding that "there is sufficient evidence to find the award of a prejudgment remedy in the amount of $380,000.00 is justified" in this matter and ordering "[a]ttachment of sufficient property . . . of the defendant to secure such sum."  (Order Granting Motion for Prejudgment Remedy, ECF No. 22, at 1.)  Judge Hall further ordered Glazet to "submit to the court and the attorney for the plaintiff a sworn statement setting forth any and all property, real or personal, in which the defendant has an interest and all debts owing to the defendant" and "appear before [her] at this court . . . to be examined under oath concerning any and all property . . . at a time and location as the court may so order."  (*Id.* at 2.)

Three days later, on September 28, 2023, Judge Hall granted Rancy's motion for disclosure of assets and ordered that Glazet "submit to plaintiff's attorney and the court within fourteen (14) days . . . a sworn statement setting forth any and all assets, and any and all property, . . . in which the defendant has any interests, and any and all debts owing to the defendant sufficient to satisfy the Order of the court."  (ECF No. 24.)  Glazet had until October 12, 2023, to comply with Judge Hall's order to disclose assets.

Rancy filed its motion for contempt relating to Judge Hall's order to disclose assets on October 19, 2023, one week after the October 12 deadline for Glazet's sworn disclosure.  (ECF No. 29.)  Judge Hall referred the motion to me, and, as Glazet filed no opposition to the motion, I scheduled a hearing for December 4, 2023, to give it the opportunity to "show cause why it should not be held in contempt for failure to comply with the September 28, 2023 order."  (ECF No. 35.)  I further ordered that "[a] responsible officer of the defendant corporation . . . attend the hearing in person."  (*Id.*)  On November 27, 2023, I received notice through the Clerk that defense counsel had stated "that the defendant may . . . not appear" for the hearing.  (ECF No. 40.)  Upon receiving

this information, I made it "clear that the hearing [would be] going forward as scheduled, and that if a responsible officer of the defendant corporation does not appear as ordered, a *capias* [would] likely issue." (*Id.*)

One day later, on November 28, 2023, defense counsel filed a motion to withdraw. (ECF No. 41.) Counsel represented that Glazet's principal, Ze Hua Li,[2] "seem[ed] . . . either unable or unwilling to follow [counsel's] directions," including "directions concerning the production of materials." (ECF No. 41-1, at 2.) Judge Hall gave Glazet "until December 20, 2023, to file with the court . . . any objection to the motion to Withdraw Appearance." (ECF No. 42.) That date has now come and gone, and Glazet has filed no objection. In the motion to withdraw, counsel also requested a two-week continuance of the show cause hearing due to a scheduling conflict, (ECF No. 41-1, at 1–2), which I granted. (ECF No. 43.)

I held the show cause hearing on December 21, 2023. (ECF No. 50.) Appearing at the hearing were Rancy's counsel, Glazet's then-counsel, and, in the gallery, Mr. Li. Glazet's counsel conceded that Judge Hall's order was clear and unambiguous, and that there existed clear and convincing proof that Glazet had not complied with that order. He also conceded that he had no evidence to show that Glazet had made any diligent attempt to reasonably comply with the order.

Mr. Li also addressed the Court. He identified himself as the sole owner of Glazet. He confirmed that he was aware of Judge Hall's order and had not complied with it. In response to further questions, he alleged that he could not understand and needed a Chinese interpreter.

IV. **ANALYSIS**

Based on these facts, I find that the record contains sufficient evidence to establish a *prima facie* case of contempt. Specifically, I find that Glazet has violated Judge Hall's order through its

---

[2] Mr. Li gave his name as Hua Ze Li, rather than Ze Hua Li, at the hearing.

continued refusal to submit a sworn statement disclosing its assets to the court and to Rancy's counsel.

Turning to the three elements that must be established, I first find that Judge Hall's order was clear and unambiguous. "A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (citations omitted). A finding of contempt is "is inappropriate if there is fair ground of doubt as to the wrongfulness of the [alleged contemnor's] conduct." *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 131 (2d Cir. 2021) (citations omitted). But in this matter, there is no basis for any doubt. The order that Glazet has ignored consisted of one sentence, requiring that Glazet present a sworn statement of all its assets and debts to the court and to Rancy's attorney within fourteen days. At the hearing, then-defense counsel proffered no reason to believe that the order was confusing or ambiguous, and openly conceded that it was not.

I also find that there is a reasonable certainty that Glazet violated Judge Hall's order. The "clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred." *Levin*, 277 F.3d at 250. The order required compliance within two weeks from September 28, 2023, that is, by October 12, 2023. Glazet did not comply by that date, and as of January 4, 2024, evidently still had not complied. Glazet does not dispute this. Moreover, Glazet has not shown that it has taken a single step towards complying with the order. While the court need not find that Glazet's noncompliance has been willful, I find that Glazet clearly has not been reasonably diligent in attempting to comply with the order.

## V.     CONCLUSION

For the reasons set forth above, I certify the foregoing facts pursuant to 28 U.S.C. §636(e)(6).  I further recommend that the court find Glazet Wholesale, Inc., in contempt of the court's order.

Finally, while "the determination of the appropriate remedy upon a finding of contempt is committed to the district court . . . , a magistrate judge may recommend sanctions for the consideration of the district court."  *Church*, 35 F. Supp. 2d at 221.  As noted above, the three factors the Court must consider when imposing coercive sanctions are "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *Dole Fresh Fruit Co.*, 821 F.2d at 110.  In this case, the "harm threatened by the continued contumacy" is the frustration of the attachment process in a case in which the Court has found probable cause to believe that Rancy will recover $380,000 from Glazet.  Moreover, to have "probable effectiveness . . . in bringing about  compliance" in Glazet's case, it is clear that the sanction must be significant; Glazet, after all, had to be threatened with a *capias* before it would obey the Court's order to send a representative to the December 21, 2023 hearing.  Finally, while the record contains little evidence on "the contemnor's financial resources and the consequent seriousness of the burden" of sanctions, it is the contemnor's "burden to show a lack of financial resources to prevent imposing monetary sanctions," *Citigroup, Inc.*, 2022 WL 1620298, at *2, and Glazet has made no such showing here.  Indeed, the only evidence in the record is that Glazet is holding over $300,000 that Rancy paid for basketball cards that were never delivered.  (ECF No. 12-2.)  Taking all three of these factors together, I recommend that Judge Hall consider imposing a sanction of $1,000.00

for each day that Glazet remains non-compliant with the order.  *See Jones v. Regent Asset Mgmt. Sols., Inc.*, No. 3:10-cv-262 (CSH), 2011 WL 2037626, at *5 (D. Conn. May 24, 2011) (imposing $1,000.00 daily sanction on contemnor that, like Glazet, was a small, closely held corporation).

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge
